**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **RYAN ANDREW HANSON,** | § | |
| **TDCJ No. 00904909,** | § | |
| **PLAINTIFF,** | § | |
| | § | |
| **V.** | § | **A-21-CV-629-RP** |
| | § | |
| **PATRICK O'DANIEL, et al.,** | § | |
| **DEFENDANTS.** | § | |

## ORDER

Before the Court are Plaintiff Ryan Andrew Hanson's pro se complaint filed pursuant to

42 U.S.C. § 1983, his Motion for Partial Summary Judgment (ECF Nos. 1, 87), and the Motion

for Summary Judgment filed by Defendants Patrick O'Daniel, Cris Love, Kim Massey, Bryan

Collier, Bobby Lumpkin, Lorie Davis, Brad Livingston, Rick Thaler, Billy Thompson, Joanie

Turner, Kendra Shelly, Bobbie Barnett, Tyra Phillips, Leeroy Cano, Monte Griffin, and Emily

Jacobs (ECF No. 95). Upon review of the pleadings and record before the Court, the Court denies

Hanson's Motion for Partial Summary Judgment and grants Defendants' Motion for Summary

Judgment.

## I. Statement of the Case

Hanson is currently confined at the Memorial Unit in the Texas Department of Criminal

Justice—Correctional Institutions Division (TDCJ-CID) (ECF No. 99); however, he was confined

to TDCJ-CID's Robertson Unit when he filed the instant complaint. Hanson names the following

defendants in their individual and official capacities: Patrick O'Daniel, Chairman of the Texas

Board of Criminal Justice (TBCJ); Cris Love, Inspector General for TDCJ-CID; Kim Massey,

Director of Classification and Records for TDCJ-CID; Bryan Collier, Executive Director of TDCJ;

Bobby Lumpkin, Director of TDCJ-CID; Lorie Davis, former Director of TDCJ-CID; Brad

1

Livingston, former Director of TDCJ-CID; Rick Thaler, former Director of TDCJ-CID; Billy Thompson, Senior Warden for the Robertson Unit; Joanie Turner and Kendra Shelly, members of the State Classification Committee (SCC) for TDCJ-CID[1]; Bobbie Barnett and Tyra Phillips, regional authorities over the Robertson Unit;[2] Leeroy Cano and Monte Griffin, Assistant Wardens at the Robertson Unit; Emily Jacobs, classification officer at the Robertson Unit; and John Does 1-2.[3] Hanson alleges Defendants violated his constitutional rights when they placed him in Administrative Segregation in March 2011[4] in retaliation for his exercise of his First Amendment rights, and that he still remained in Administrative Segregation without meaningful review due to a classification error Defendants refused to correct. He claims violations of (1) his right to due process under the Fourteenth Amendment, (2) his right to equal protection under the Fourteenth Amendment based on a class-of-one, (3) his right to freedom from cruel and unusual punishment under the Eighth Amendment, and (4) retaliation. (ECF No. 1.)

Hanson moves for partial summary judgment against Defendants Barnett, Cano, Phillips, Griffin, Shelly, and Jacobs, arguing there is no genuine issue of material fact regarding his claims against them based on violations of his due process and Eighth Amendment rights. (ECF No. 87.) Defendants also move for summary judgment, arguing that (1) they are immune from monetary damages for Hanson's claims against them in their official capacities; (2) Hanson fails to allege the personal involvement of all Defendants except for Jacobs, Love, and O'Daniel; (3) Hanson fails to state a claim for an Eighth Amendment violation; (4) the record does not support Hanson's claim that Defendants violated his due process rights by keeping him in Administrative

---

[1] "Joanie Turner" and "Kendra Shelly" are hereby substituted as the correct names for "J. Turner" and "K. Shelly."

[2] "Bobbie Barnett" and "Tyra Phillips" are hereby substituted as the correct names for "B. Barnett" and "T. Phillips."

[3] Hanson did not identify and failed to serve John Does 1-3.

[4] In 2019, TDCJ began referring to Administrative Segregation as Restrictive Housing. (ECF No. 95 at 4 fn.3.) The Court uses the term "Administrative Segregation" to refer to both Administrative Segregation and Restrictive Housing in this Order.

Segregation; (5) Hanson's class-of-one equal protection claim against Defendant Jacobs fails as a matter of law; and (6) Hanson's retaliation claim is barred by the statute of limitations and also fails as a matter of law. Defendants also argue they are entitled to qualified immunity. (ECF No. 95.) Hanson has responded to Defendants' motion for summary judgment, restating his arguments from his complaint and from his motion for partial summary judgment. (ECF No. 98.)

## II. Factual Background

The competent summary judgment evidence shows the following.[5] Hanson was sentenced to life imprisonment in 1999. (ECF No. 1 at 5.) In 2006, while Hanson was incarcerated in TDCJ-CID's Hughes Unit, he was placed in the unit's craft shop. (ECF No. 1 at 5.) The craft shop had several "Odinist inmates," who Hanson alleges conspired with correctional officer Major Tadlock to remove non-Odinist craft shop workers so that more Odinist inmates could join the craft shop. Accordingly, the Odinist inmates distributed marijuana to other craft shop workers, but Hanson declined the marijuana. Nonetheless, on November 29, 2009, Tadlock targeted Hanson for a urinalysis; Tadlock then claimed it was positive for marijuana. Tadlock told Hanson he would receive favorable treatment if he identified other marijuana users. Hanson cooperated but still received a major disciplinary for the positive urinalysis test. (ECF No. 1 at 5-6.)

On December 18, 2009, Hanson filed a Step 1 grievance regarding his disciplinary conviction, but it was returned unanswered because the time for filing a grievance had expired. (ECF No. 1-3 at 2-3.) Hanson then filed a Step 1 and Step 2 grievance regarding the return of his December 18 grievance, both of which were denied. (ECF No. 1-4 at 2-5.) In January 2010,

---

[5] In Hanson's complaint, motion for partial summary judgment, and response to Defendants' summary judgment motion, he declares under penalty of perjury that "the facts alleged herein are true and correct on information and my belief" and "the foregoing is true and correct." (ECF Nos. 1 at 30; 87-3 at 4, 98 at 8.) Accordingly, these pleadings constitute competent summary judgment evidence. *See Hernandez v. Velasquez*, 522 F.3d 556, 561 (5th Cir. 2008) (verified pleadings are competent evidence at summary judgment); *Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003) (complaint signed with declaration of penalty under perjury that "foregoing is true and correct" was verified).

Hanson was advised that the "favor" for his cooperation with Tadlock was a transfer from the high-security Hughes Unit (where Hanson was confined) to the medium-security Daniel Unit. (ECF No. 1 at 6.) Finally, in April 2010, Hanson filed a Petition for Judicial Review in Texas state court, but the petition was denied and he voluntarily dismissed the appeal. (ECF Nos. 1 at 7; 1-5; 1-6.) Hanson then started preparing a federal civil rights lawsuit against Tadlock for the fabricated urinalysis test. (ECF No. 1 at 7.)

In March 2011, Hanson began writing a fictional book about escaping a prison; in the book, he included a top-down view of a prison complex so readers would have a mental image of the escape attempt. He shared this information with officials at the Daniel Unit. (ECF No. 1 at 7.) However, on March 24, 2011, Hanson was transferred to the maximum-security Robertson Unit because officials believed his capital sentence made him an escape risk. (ECF No. 1 at 7.)

The disciplinary record states that on March 24, 2011, a Robertson Unit correctional officer searched Hanson's property and found the following:

> … a colored map from a newspaper which contained the following counties: Scurry, Mitchell, Fisher, Nolan, Jones and Taylor. The map indicted various routes of possible electrical lines and placement of substations. The offender had indicated on the map the location of the Daniel Unit along with the distance (27 miles) south to Interstate 20 and the distance of miles headed east from the unit. An additional hand drawn map of the Daniel Unit was found. This map noted surrounding county roads and state roads. A third piece of paper had a list of names which detailed what each person was responsible for. The responsibilities of the persons were gather money, gather blades to cut bars, obtain[] illegal drugs and provide a signal when time was right. Said offender also indicated he was providing Unit details such as count times, daily schedules and his cell location within the facility.

(ECF No. 95-1 at 3.)[6] The officer charged Hanson with violating Code 1.1, Attempted Escape and recommended he be transferred to Administrative Segregation Security Detention. (ECF No. 95-1 at 6.) During the preliminary investigation, Hanson admitted to possessing the contraband,

---

[6] The names of the people Hanson listed was as follows: Abby, Andy, Beth, Ben, Daisy, Dan, Erin, Eric, Freya, Fred, Greta, Garry, Helen, Iris. (ECF No. 95-1 at 10.)

stating "I was distraught over a recent major case I received (and tried to appeal through the courts) through a wrongful urinalysis improperly labeled that was used to convict me for THC in my urine. I thought about escaping because of the type [of] unit they put me on but I quickly came to my senses—it wasn't possible & death was certain." (ECF No. 95-1 at 7.)

Hanson pleaded not guilty at his March 25, 2011, disciplinary hearing. He stated at the hearing "I have proof in property on last unit, I'm a writer. It was an idea that I wrote about, I told counsel sub about it when they found me guilt[y of] code 12.[7] I went a little crazy. I was distraught. I gave it [some] thought about escaping but I decided it wasn't feasible so I stopped thinking about it. I wrote some things down but I should have thrown them away." (ECF No. 95-1 at 12-13.)

The hearing officer found Hanson guilty based on the correctional officer's report and Hanson's statement admitting to possession of the contraband. Hanson lost 365 days of good time credit, 45 days of commissary and recreation privileges, and was reduced from Class S4 to L2. (ECF No. 95-1 at 5.) On March 28, 2011, Hanson was admitted to Level III Administrative Segregation. (ECF No. 95-1 at 4.) Hanson alleges he passed a polygraph exam wherein he stated the illustration was a First Amendment activity, not an escape attempt. (ECF No. 1 at 7-8.)

Between 2011 and 2013, Hanson created pencil portraits and gifted them to his friends, while also promoting them on the internet. (ECF Nos. 1 at 8; 1-9.) In 2015, Hanson received a major disciplinary charge for running an unauthorized business, based on false allegations that his pen-pal offered to sell his portraits for a percentage of the profits. (ECF No. 1 at 9.)[8]

---

[7] In TDCJ-CID's "Disciplinary Rules and Procedures for Offenders" Code 12.0 is listed as "Use or possession of marijuana or an unauthorized controlled substance or association paraphernalia, and/or use, possession, distilling or brewing any alcoholic beverage." *See* TEX. DEP'T CRIM. JUST. CORR. INST. DIV., DISCIPLINARY RULES AND PROCEDURES FOR OFFENDERS, Attachment A (August 2019), https://www.tdcj.texas.gov/documents/cid/Disciplinary _Rules_and_Procedures_for_Offenders_English.pdf.

[8] In his complaint, Hanson states this disciplinary happened in 2013; however, other summary judgment records— including those Hanson included with his motion for partial summary judgment—state it occurred in 2015.

At Hanson's September 25, 2018 SCC review hearing, he requested release to the Administrative Segregation Transition Program (ASTP). (ECF No. 1 at 9.) Hanson states that SCC representative Kyle Coston denied his request based on Hanson's designation as "Escape Risk." (ECF No. 1 at 9.) Hanson then filed a Step 1 grievance on October 5, 2018, challenging this decision because he had (1) no escape history, (2) committed no violent acts in TDCJ custody, (3) no disciplinary infractions since 2015, and (4) no current or prior gang affiliations. He again requested placement in the ASTP. Defendant Cano denied the grievance, stating the SCC decided to continue him in Administrative Segregation based on his history of being an escape risk. (ECF No. 1-12.) Hanson filed a Step 2 grievance, arguing the SCC had not provided reasons for why he could not transition to ASTP and that TDCJ policy required that SCC decisions be based on five specific areas. Defendant Barnett denied the grievance, stating Hanson had not provided any evidence or information that had not previously been considered, and there was no conclusive evidence of policy violations. (ECF No. 1-13.)

Hanson then contracted the services of prison consultant Harvey R. Cox. On October 31, 2018, Mr. Cox wrote to TDCJ Ombudsman Jane M. Cockerman asking for assistance in having Hanson released from Administrative Segregation. Mr. Cox noted Hanson's good conduct with the exception of the 2015 disciplinary and the 2011 attempted escape charge. He further noted all the educational and rehabilitative programs Hanson had completed prior to Administrative Segregation. Mr. Cox restated Hanson's complaints about his 2018 SCC review and his frustration that the response of the SCC had been the same over 8 years of segregation. (ECF No. 1-14.)

On December 12, 2018, the TDCJ Office of the Ombudsman responded by stating that, after the March 2011 attempted-escape conviction, Hanson had been given a special precaution designator (SPD). The Ombudsman stated that, under TDCJ's current classification plan, "the

designator remains in place for ten years and in some circumstances longer." Further, "the code will not allow offender Hanson to be promoted beyond G4 for ten years from the date of the incident." The ombudsperson concluded that Hanson "is appropriately housed and assigned to his custody level within his status." (ECF No. 1-15.) Hanson states that this was the first time he learned there was an SPD in his file. (ECF No. 1 at 10.)

Hanson provided a page from Attachment C of AD-04.11 (rev. 5), which lists various codes and then provides "[e]xamples of situations or criteria for placement of an SPD." For the code "ES" it states the following:

> Escape from an ACF, including state, federal, city, county, and secure pre-parole facilities. If an offender is incarcerated at an ACF and being transported for medical or other reasons when the escape occurs, the incident shall be classified ES. Escape requires the commission of an overt act, such as cutting a hole in a fence, running from a field squad, or climbing through a window. These offenders shall not be assigned to a custody designation less restrictive that G4/J4.

The document then lists other codes that "are not considered security precaution designators, but are used for informational purposes." For the code "EA" examples include:

> A non-overt act indicating that an escape might be forthcoming, such as planning an escape or having items related to an escape in the cell. Even if the offender was charged with escape, if the act was not overt and was only an attempt, it should be coded EA.

(ECF No. 87-3 at 27.)

On February 12, 2019, Hanson sent Defendant Jacobs a letter signed pursuant to 28 U.S.C. § 1746 (unsworn declarations under penalty of perjury), requesting that she confirm the code "EA" was placed in his prison records. (ECF No. 1-16.) Defendants Jacobs did not respond. (ECF No. 1 at 10.) On February 26, 2019, Hanson filed a Step 1 grievance, noting Defendant Jacobs had not responded to his request for information, and stating that he recently discovered he was inappropriately classified under the "ES" code on his official prison records. He argued his 2011

offense was a "non-overt" offense and should not be classified as an SPD. Defendant Cano responded that an "[i]nvestigation revealed that the code listed on your record is appropriate and in compliance with TDCJ policy and procedure." (ECF No. 1-17.) Hanson then filed a Step 2 grievance, stating he had requested to know the specific code that was listed on his TDCJ records, but Cano failed to provide it. Defendant Barnett responded that Hanson had been appropriately advised at the Step 1 level, and no further action was warranted. (ECF No. 1-18.)

At Hanson's March 26, 2019, SCC review hearing, his security category was changed from "Current Escape Risk" to "Threat to the physical safety of others and/or the order and security of the prison." (ECF No. 1-19.) This is the only time in the records before the Court that Hanson was categorized as a threat to the safety of others rather than a current escape risk. (ECF No. 95-3.) The SCC continued Hanson's Administrative Segregation detention and checked the box "Escape Risk (ES)" as the basis for their decision along with writing "S4/1A" in the "Other" section. Defendants Turner and Jacobs attended this meeting as SCC members. (ECF No. 1-19 at 3.) Hanson was told at the meeting that "EA" was listed in his record and there is a handwritten "EA" next to the checked box for "Escape Risk (ES)." (ECF Nos. 1 at 11; 1-19 at 3.)

On April 5, 2019, Hanson filed a Step 1 grievance, complaining about Defendant Turner's denial of his request to be admitted into the ASTP. Hanson argued that, despite noting at the hearing that Hanson was classified as "EA," Turner provided no reasonable justification for her decision. He further stated that TDCJ policy requires both reasons and a summary be provided for any SCC decision, but he had not received any reasons for the denial of his request and Turner had not conferred with any SCC members before refusing it. He also noted he had been in Administrative Segregation since 2011, had no disciplinary infractions since 2015, had no violent incidents with anyone since 2000, and met all five factors to be released back into the general

population per TDCJ policy. In response, Defendant Griffin stated "[i]nvestigation revealed that you were remained in adseg [sic] due to your continued escape risk. You are appropriately assigned." (ECF No. 1-20.) Hanson filed a Step 2 grievance, arguing Griffin's response failed to address the SCC's failure to provide him with a fair and just hearing. He also stated that in his 21 years of confinement, he had never been found outside of his assigned/designated area of custody. Defendant Barnett responded that Hanson's allegations "could not be sustained. You were appropriately advised at the Step 1 level." (ECF No. 1-22.)

On June 18, 2019, TDCJ Ombudsman Tracy Yates responded to another inquiry from Mr. Cox regarding "unlawfully placing 'SPD' designator on offender escape attempt." Ms. Yates stated that "[r]ecords reflect an attempted escape indicator is used to document attempted escapes. The code is used for offenders who have attempted to escape from a secure adult correctional facility. The EA is not considered a security precaution designator, but it is used for informational purposes." (ECF No. 1-21.)

At Hanson's September 12, 2019, SCC review hearing, he was once again categorized as "Current escape risk" and the summary of the basis for the SCC's decision was once again "Escape Risk (ES)" although the "(ES)" is struck through and "EA (2011)" is handwritten next to it. (ECF No. 1-23.) Hanson alleges Defendant Shelly denied his request to be admitted to ASTP. (ECF No. 1 at 12.)

On September 25, 2019, Hanson filed another Step 1 grievance following the SCC hearing, stating Defendant Shelly had not conferred with any other SCC members before continuing Hanson in Administrative Segregation. When Hanson asked Shelly the reasons for her decision, she stated it was in her discretion and she had no reasons to give him. He requested a fair rehearing or to be returned to the general population. Defendant Cano responded that the SCC's decision

"was to remain you in your current security detention status based on your escape history" and that all three members agreed. Hanson appealed Cano's decision in a Step 2 grievance, stating he does not have an escape history; rather, he was found in possession of a sketched diagram of a prior prison unit, not the one where the drawing was confiscated, and he was convicted of attempted escape which is not an SPD offense. Defendant Phillips responded "Step 1 has addressed your complaint. State Classification Committee made the final decision during your SCC hearing. No further action is warranted." (ECF No. 1-24.)

Hanson signed his federal complaint on July 13, 2021, while he was still confined in the Robertson Unit. (ECF No. 1.) On February 16, 2021, Hanson notified the Court he had moved to the Michael Unit. (ECF No. 50.) At Hanson's April 28, 2022 SCC review hearing at the Michael Unit, the committee noted it had been 11 years since Hanson was caught with escape paraphernalia and 6 years since his last major disciplinary. They further noted he had achieved S4 status and wanted to return to general population. The SCC voted to transfer Hanson to the general population upon his completion of the Unit's Cognitive Intervention Transition Program (CITP). (ECF No. 95-2 at 3-5.) Hanson states he left Administrative Segregation on October 12, 2022. (ECF No. 87 at 3.)

Regarding his claims of retaliation, Hanson alleges TDCJ-CID staff have an informal "We Protect Our Own" policy that requires "career-minded personnel to deliberately violate [a] prisoner's rights when deemed necessary to protect financial resources or to look the other way when personnel target a particular offender for abuse." (ECF No. 1 at 12.) He states that, once staff became aware he was preparing a federal complaint against Major Tadlock, Defendant John Doe 3 brought attention to Hanson's fictional book so that Hanson would be transferred to the Robertson Unit and assigned to Administrative Segregation as punishment. Hanson further alleges

Defendant John Doe 1 requested the ES code be placed in his records, and Defendant John Doe 2 honored this request. (ECF No. 1 at 13.) Hanson states Defendant Jacobs attached the incorrect "SPD ES" designation to his record to further punish him for his complaint against Tadlock, and that, when Hanson requested clarification about his designation status, Jacobs reclassified him as a threat to security rather than an escape risk. (ECF No. 1 at 14.)

### III. Discussion and Analysis

1. Permanent Injunctive Relief

In his complaint, Hanson seeks a "Permanent injunction" against the following:

1.  retaliatory We-Protect-Our-Own policies
2.  the atypical and significant hardship of indefinite isolation
3.  irrational class-of-one treatment as an indefinite escape risk
4.  cruel and unusual isolation posing a risk to his future health and
5.  classification decisions based upon the unconstitutional combination of AD-03.50 and AD-04.11 procedures

(ECF No. 1 at 30.) All of Hanson's requests for injunctive relief stem from his confinement in Administrative Segregation. However, Hanson left Administrative Segregation and returned to general population on October 12, 2022. As a result, Hanson's request for injunctive relief is mooted by his transfer out of Administrative Segregation. *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001) (citing *Cooper v. Sheriff, Lubbock Cnty., Tex.*, 929 F.2d 1078, 1084 (5th Cir. 1991)). Further, the possibility that Hanson might again be transferred to Administrative Segregation based on another escape attempt is too speculative to warrant the Court granting injunctive relief. *Id.* (citing *Bailey v. Southerland*, 821 F.2d 277, 279 (5th Cir. 1987)).

2. Summary Judgment and Qualified Immunity

Hanson moves for partial summary judgment against Defendants Barnett, Cano, Turner Phillips, Griffin, Shelly, and Jacobs; Defendants also move for summary judgment and assert their entitlement to qualified immunity. (ECF Nos. 87, 95.)

"Summary judgment must be granted 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Trammell v. Fruge*, 868 F.3d 332, 338 (5th Cir. 2017) (quoting FED. R. CIV. P. 56(a)). The Court "'view[s] the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor.'" *Hanks* v. *Rogers*, 853 F.3d 738, 743 (5th Cir. 2017) (quoting *Deville v. Marcantel*, 567 F.3d 156, 163-64 (5th Cir. 2009)).

Both movants and non-movants bear burdens of proof in the summary judgment process. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The movant with the burden of proof at trial must establish every essential element of its claim or affirmative defense. *Id.* at 322. The moving party without the burden of proof need only point to the absence of evidence on an essential element of the non-movant's claims or affirmative defenses. *Id.* at 323-24. At that point, the burden shifts to the non-moving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. The non-moving party cannot rely on general allegations but must produce "specific facts" showing a genuine issue for trial. *Tubacex v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995).

"A qualified immunity defense alters the usual summary judgment burden of proof." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). A government official performing a discretionary function is shielded from liability for civil damages so long as his actions do not violate a clearly established right of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Brown*, 623 F.3d at 253.

The plaintiff must therefore present evidence sufficient to create a genuine dispute of material fact as to whether (1) the official's conduct violated a constitutional right of the plaintiff, and (2) the constitutional right was clearly established so that a reasonable official in the defendant's situation would have understood that his conduct violated that right. *See id.*; *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). For the right to be clearly established, the plaintiff must show that defendants had "fair warning that the alleged treatment of [Plaintiff] was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

When considering a qualified immunity defense, the Court (1) views the evidence in the light most favorable to the non-movant and draws all inferences in the non-movant's favor, *Rosado v. Deters*, 5 F.3d 119, 122-23 (5th Cir. 1993), and (2) cannot make credibility determinations or weigh the evidence, *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

a. *Personal Involvement—Defendants Massey, Collier, Lumpkin, Thompson, Davis, Livingston, and Thaler*

Defendants argue that, with the exception of Defendants O'Daniel, Jacobs, and Love, Hanson has failed to allege their personal involvement in violating his constitutional rights. (ECF No. 95 at 8-9.) Hanson disputes this and points to the allegations in his complaint. (ECF No. 98 at 3.) Because Defendants are immune from suit for money damages in their official capacities, and because Hanson's request for injunctive relief has been mooted by his transfer out of Administrative Segregation, Hanson must show the personal involvement of each Defendant for them to be liable for monetary damages in their individual capacities.[9]

To that end, Hanson must establish that each defendant was either personally involved in violating his constitutional rights or "commit[ted] acts [that] are causally connected to the

---

[9] Hanson explicitly denies bringing any claims for money damages against the defendants in their official capacities. (ECF No. 98 at 2.)

constitutional violation alleged." *Magnolia Island Plantation, L.L.C. v. Whittington*, 29 F.4th 246, 251 (5th Cir. 2022); *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992) (plaintiff bringing a § 1983 action must specify the personal involvement of each defendant). "An official cannot be held liable in his individual capacity merely because a subordinate committed some constitutional violation; '[s]ection 1983 does not impose vicarious or respondeat-superior liability.'" *Magnolia Island Plantation, L.L.C.*, 29 F.4th at 251 (quoting *Anderson v. Pasadena Indep. Sch. Dist.*, 183 F.3d 439, 443 (5th Cir. 1999)). That is to say, "'a supervisor is not personally liable for his subordinate's actions in which he had no involvement.'" *Id.* (quoting *Jams v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008)).

Hanson has failed to show the personal involvement of Defendants Kim Massey, Bryan Collier, Bobby Lumpkin, Billy Thompson, Lorie Davis, Brad Livingston, and Rick Thaler. At no point in his complaint, his motion for partial summary judgment, or his response to Defendants' motion for summary judgment does Hanson make allegations that these defendants knew of his assignment to Administrative Segregation, knew of his alleged misclassification as "ES" rather than "EA," or were personally involved in any way in keeping Hanson confined to Administrative Segregation from March 2011 until October 2022. Indeed, Hanson's only response to Defendants' argument that they lack personal involvement is "Plaintiff clearly alleged essential elements of Constitutional violations as required in this civil action against each Defendant in both his Complaint . . . and MPSJ . . . ." (ECF No. 98 at 3.)

The Court finds no such essential elements alleged in any of Hanson's pleadings. Accordingly, because Hanson failed to show their personal involvement in any alleged violations of his constitutional rights, Defendants Massey, Collier, Lumpkin, Thompson, Davis, Livingston, and Thaler are entitled to qualified immunity.

*b. Inadequate Response to Grievances—Defendants Barnett, Phillips, Griffin, and Cano*

Hanson's allegations against Defendants Bobbie Barnett, Tyra Phillips, Monte Griffin, and Leeroy Cano are also insufficient to show they violated his constitutional rights. At most, Hanson alleges these defendants knew he had been wrongfully confined in Administrative Segregation because they reviewed and denied the grievances he filed. However, it is well-established that prisoners do not have a protected liberty interest in having their grievances addressed and resolved to their satisfaction. *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005); *see also Hawes v. Stephens*, 964 F.3d 412, 418 (5th Cir. 2020) (same). Accordingly, because Hanson has failed to show these defendants violated his constitutional rights, Defendants Barnett, Philips, Griffin, and Cano are entitled to qualified immunity.

*c. Due Process Claim—Defendants O'Daniel, Turner, Shelly, and Jacobs*

Hanson alleges that his constitutional right to due process was violated when Defendants Patrick O'Daniel, Joanie Turner, Kendra Shelly, and Emily Jacobs continued his confinement in Administrative Segregation without providing him meaningful review. Defendants argue Hanson does not have a liberty interest in avoiding Administrative Segregation, and that, even if Hanson did have a liberty interest, he has failed to show the process he received was constitutionally deficient.

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must first establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court held that a prisoner's liberty interests "will be generally limited to freedom from restraint which, . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.

In general, prisoners do not have a liberty interest in their custodial classification, including their transfer into Administrative Segregation. *See Hernandez v. Velasquez*, 522 F.3d 556, 562 (5th Cir. 2008) (per curiam); *Bailey v. Fisher*, 647 F. App'x 472, 474 (5th Cir. 2016) (unpublished per curiam) ("Solitary confinement is typically viewed as an ordinary, expected, and permissible incident of prison life."). For instance, in *Sandin*, the Court held that no liberty interest was implicated by a prisoner's segregated confinement for thirty days. *Sandin*, 515 U.S. at 485-86. To determine if a change in custodial classification implicates a liberty interest, the Court considers both "'the nature of the more-restrictive confinement *and* its duration in relation to prison norms and to the terms of the individual's sentence.'" *Wilkerson v. Goodwin*, 774 F.3d 845, 853 (5th Cir. 2014) (quoting *Harden-Bey v. Rutter*, 524 F.3d 789, 792 (6th Cir. 2008)).

At the time he filed his complaint, Hanson had been confined to Administrative Segregation for over 8 years and believed his confinement to be indefinite. He describes the conditions in the Robertson Unit's Administrative Segregation as similar to those described in *Wilkinson v. Austin*, 545 U.S. 209 (2005) with "'23 hours a day in individual cells with metal doors, where inmates ate their meals alone, visits . . . were conducted through a [glass partition], and placements were indefinite.'" (ECF No. 87 at 7) (quoting *Wilkinson*, 545 U.S. at 214, 223-24.) Hanson also alleges, and Defendants do not deny, that TDCJ-CID only permits those inmates in Administrative Segregation limited outdoor exercise, and forbids religious services, classroom educational programs, and library visits. Defendants do not deny Hanson's allegations that the conditions he experienced were as severe as those described in *Wilkinson*, and Hanson was confined to those conditions for a period of over 11 years. Based on the duration of Hanson's confinement and its severity, the Court concludes Hanson had a liberty interest in avoiding such conditions. See *Wilkinson*, 545 U.S. at 223-24 (describing conditions of confinement for inmates

in the Ohio State Penitentiary; concluding that these conditions, along with indefinite term of confinement, review occurring only annually, and placement in OSP disqualifying an inmate from parole consideration resulted in an atypical and significant hardship); *Carmouche v. Hooper*, No. 21-30082, 2023 WL 5116377 (5th Cir. Aug. 10, 2023) (published) (holding there is no threshold for how long an inmate must be in Administrative Segregation for it to be "atypical"; courts must apply a nuanced, case-by-case analysis of whether the conditions represented a dramatic departure from the ordinary incidents of prison life); *Wilkerson*, 774 F.3d at 855 (citing *Shoats v. Horn*, 213 F.3d 140, 144 (3d. Cir. 2000) for proposition that eight years in administrative custody is the duration deemed sufficient to give rise to a liberty interest).

Because Hanson was deprived of a liberty interest during his 11-year confinement in Administrative Segregation, the Court next examines whether the procedures related to this deprivation were constitutionally sufficient. *See Meza v. Livingston*, 607 F.3d 392, 399 (5th Cir. 2010). The Supreme Court has stated that "the requirements of due process are 'flexible and cal[l] for procedural protections as the particular situation demands.'" *Wilkinson*, 545 U.S. 209, 224 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). The Court further stated the procedures should be evaluated using the framework established in *Mathews v. Eldridge*, 424 U.S. 319 (1976), where a court considers (1) the private interest affected, (2) the risk of erroneous deprivation of the interest through the procedures used along with the probable value of additional procedural safeguards, and (3) the Government's interest, including the burdens of additional procedural safeguards. *Wilkinson*, 545 U.S. at 224-24 (quoting *Mathews*, 424 U.S. at 335.)

Recently, the Fifth Circuit considered the sufficiency of the due process protections for a prisoner who was confined to Administrative Segregation for 19 years based on SPD codes for escape risk, hostage taker, and staff assaultive. *Striz v. Collier*, No. 20-40878, 2022 WL 1421834

(5th Cir. May 5, 2022). The plaintiff alleged he had been confined to Administrative Segregation for 19 years for no valid penological reason and that his classification reviews were a "perfunctory sham." *Striz v. Collier*, No. 3:18-cv-202, 2020 WL 7868102, at *1 (S.D. Tex. Nov. 24, 2020.) The summary judgment record showed the plaintiff "(1) [was] provided with advanced notice of the review hearings; (2) [was] provided an opportunity to speak at the hearings, (3) [could] submit written statements from witnesses, (4) [could] submit other documentary evidence, and (5) [was] given notice of the factual basis for the review committees' decision." *Id.* at *10. The record also showed that, like Hanson, the plaintiff received regular thirty-day reviews of his unit classification and six-month reviews by the SCC. *Id.* The district court concluded that the plaintiff had failed to show the process he received was constitutionally deficient. *Id.* at *11.

On appeal, the Fifth Circuit held that summary judgment was appropriate on the plaintiff's due process claims because "the prison provided [the plaintiff] with the process that is due through advance notice of review hearings and an opportunity to speak and submit evidence at those hearings." *Striz*, 2022 WL 1421834 at *1 (citing *Bailey*, 647 F. App'x at 477 n.9).

The process Hanson received is almost identical to the plaintiff in *Striz* with monthly ASC/RHC review meetings and a bi-annual SCC review meeting. Hanson was also provided advance notice of these meetings and was able to speak and submit evidence at them. His complaint is that these meetings were effectively rubber-stamps and that no one corrected what he perceived to be a critical error in his classification, i.e., that he was an "EA" rather than an "ES." However, the record shows that the "ES" was crossed-out on several SCC review hearing documents and replaced with an "EA." Further, Hanson filed grievances after these meetings and was assured that his classification was correct. Hanson's dissatisfaction with the outcome of his review meetings and grievances does not mean the process he received was constitutionally

deficient. Rather, based on the record before the Court, Hanson received all the process he was due. Accordingly, because Hanson has failed to show the violation of a constitutional right, Defendants O'Daniel, Turner, Shelly, and Jacobs are entitled to qualified immunity on this claim.

> d. *Eighth Amendment—Defendants O'Daniel, Turner, and Shelly*

Hanson next claims that his time in Administrative Segregation amounts to cruel and unusual punishment under the Eighth Amendment. To support his claim, Hanson alleges that Administrative Segregation prohibits all social interaction; does not allow for offenders to congregate with peers; offers no educational or rehabilitative programming to security detention offenders; and subjects him to "cacophonous" conditions created by other inmates and the "violence visited upon them by 5-man cell move teams, including pepper spray." (ECF No. 1 at 19.) Defendants argue they are entitled to qualified immunity because Hanson's allegations do not amount to a violation of his constitutional rights.

"'The unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'" *Hope v. Pelzer*, 536 U.S. 730, 737 (2002) (quoting *Whitely v. Albers*, 475 U.S. 312, 319 (1986)). "'The Constitution does not mandate comfortable prisoners . . . but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.'" *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (quoting *Woods v. Edwards*, 51 F.3d 577, 581 (1995)). Prison officials must therefore ensure that "inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S 157, 526-27 (1984)).

To establish a violation of his Eighth Amendment right to be free from cruel and unusual punishment, Hanson must first show that "the alleged deprivation was objectively serious, exposing him to a substantial risk of harm and resulting in the denial of the minimal civilized measure of life's necessities." *Arenas v. Calhoun*, 922 F.3d 616, 620 (5th Cir. 2019) (citation and quotations omitted). Second, Hanson must show that the defendants possessed a "sufficiently culpable state of mind," which, in the context of prison cases, "is one of deliberate indifference to inmate health or safety" *Palmer v. Johnson*, 193 F.3d 346, 352 (5th Cir. 1999) (citing *Farmer*, 511 U.S. at 834). In this context, a prison official exhibits deliberate indifference if "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Assuming without deciding that Hanson's time confined to Administrative Segregation was an objectively serious deprivation that exposed him to a substantial risk of harm, he has nonetheless failed to show that Defendants O'Daniel, Turner, and Shelly were deliberately indifferent to his health or safety. The record shows that Turner and Shelly were on various SCCs that voted to continue Hanson's confinement in Administrative Segregation. There is no record support, however, that any of these defendants were in charge of the conditions in Administrative Segregation, or that they knew the conditions in Administrative Segregation were exposing Hanson to a substantial risk of harm and disregarded that risk. Defendants O'Daniel, Turner, and Shelly are entitled to qualified immunity on this claim.

e. *Equal Protection—Defendants O'Daniel, Jacobs, John Does 1-2, Turner, and Shelly*

Hanson raises a "class of one" equal protection claim alleging that Jacobs and unnamed Defendants John Does 1-2 attached the designation "ES" to his record in an effort to intentionally

treat Hanson differently than all other prisoners classified "EA" for acts of attempted escape. He also alleges Turner and Shelly erred in equating "EA" with "ES" and that O'Daniel failed to review the manner in which he was classified. Hanson claims this amounts to a class-of-one violation under the Fourteenth Amendment's Equal Protection Clause. (ECF No. 1 at 27-28.)

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). A class-of-one claim alleges differential treatment not based on membership in a suspect class or on the infringement of a fundamental right. *See Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 594 (2008); *Wood v. Collier*, 836 F.3d 534, 539 (5th Cir. 2016). Rather, to establish a class-of-one claim, the plaintiff must first show he or she was intentionally treated differently from others similarly situated, and then show that there was no rational basis for the differential treatment. *See Lindquist v. City of Pasadena. Tex.*, 669 F.3d 225, 233 (5th Cir. 2012).

Hanson fails to meet the first prong of this test: he alleges, but does not show, that he was treated differently from others similarly situated. Although Hanson appears to believe that his designation of "EA" should have resulted in different treatment than an "ES" designation, he does not show that his treatment differed in any way from other inmates with "EA" designations. Therefore, Jacobs, O'Daniel, Turner, and Shelly are entitled to qualified immunity on this claim. Further, regarding John Does 1-2 whom Hanson failed to name and serve, as against them this claim is dismissed with prejudice for failure to state a claim upon which relief can be granted. 28 U.S.C. § 1915A (court shall review a complaint in a civil action where prisoner seeks redress from

a governmental agency or officer; court shall dismiss the complaint if it is frivolous, malicious, or fails to state a claim upon which relief can be granted.)

     *f.   Retaliation—O'Daniel, Love, Jacobs, John Does 1-3, Turner, and Shelly*

     In Hanson's final claim, he argues that Jacobs and Defendants John Does 1-3 retaliated against him for preparing a federal civil rights complaint against Major Tadlock by transferring him to the Robertson Unit, bringing disciplinary charges against him, and having the SPD "ES" attached to his records. He also alleges Jacobs switched his security designation from "current escape risk" to "threat to others" after he asked her to clarify that "EA" was in his records. Hanson further states that Turner and Shelly failed to correct the above actions and that O'Daniel and Love failed to investigate, review, and eliminate the "We Protect Our Own" policies. (ECF No. 1 at 14, 20-24.) Defendants argue that these claims are barred by the statute of limitations. (ECF No. 95 at 17-18.) Hanson argues his claims are not barred by the statute of limitations because he did not become aware of the retaliatory actions until January 2019 when he read the TDCJ Ombudsman letter. (ECF No. 98 at 7.)

     The statute of limitations for a § 1983 claim is determined by the forum state's limitations period for personal injury torts. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). In Texas, that is two years from the date the cause of action accrues. TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a); *Schaefer v. Gulf Coast Reg'l Blood Ctr.*, 10 F.3d 327, 331 (5th Cir. 1994). Federal law determines when a § 1983 cause of action accrues. *Gartrell v. Gaylor*, 981 F.2d 254, 257 (5th Cir. 1993). A cause of action under § 1983 accrues when the aggrieved party knows, or has reason to know of, the injury or damages which form the basis of the action. *Piotrowski v. City of Houston*, 51 F.3d 512, 516 (5th Cir. 1995).

Hanson alleges his claim accrued in January 2019 when he received the letter from the TDCJ Ombudsman stating that he had an SPD in his record. Further, he was recategorized as a "threat to others" on March 26, 2019. Assuming without deciding that Hanson's claims accrued on the dates he suggests, he had until January 2021 to file a complaint raising the claims against O'Daniel, Love, Turner, Shelly, and John Does 1-3, and until March 26, 2021, to raise his claim against Jacobs. Hanson's complaint was filed on July 15, 2021, months after the limitations period had expired for both claims, and he has also not established entitlement to any tolling during this period. Accordingly, these claims are time-barred from consideration.

## IV. Conclusion

It is therefore **ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 95) is **GRANTED**.

It is further **ORDERED** that Hanson's claims against the defendants identified as John Does 1-3 are **DISMISSED WITH PREJUDICE** for failure to state a claim under 28 U.S.C. § 1915A.

It is finally **ORDERED** that Hanson's Motion for Partial Summary Judgment (ECF No. 87) is **DENIED**.

SIGNED this 23rd day of August, 2023.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE